**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PATRICK BRIAN FARRONE, | ) | Civil Docket No. 2:23-CV-01528-CCW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **FIRST AMENDED COMPLAINT** |
| PETER C. ACKER; and THE COUNTY OF | ) | |
| MERCER, PENNSYLVANIA, | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| Defendants. | ) | |

## <u>FIRST AMENDED COMPLAINT</u>

Plaintiff, Patrick Brian Farrone, through his counsel, states the following:

## <u>PARTIES</u>

1.  Plaintiff, Patrick Brian Farrone ("Plaintiff" or "Mr. Farrone") is an adult resident of the Commonwealth of Pennsylvania.  He is a former employee of Defendant Mercer County via his employment at the Mercer County District Attorney's Office.

2.  Defendant Mercer County is a political subdivision of the Commonwealth of Pennsylvania with its county seat located in Mercer, Pennsylvania.  The County employs 15 or more full-time employees in various capacities and at all times relevant has met the definition of "person" and "employer" under the relevant statutes herein.

3.  Defendant Peter C. Acker ("Mr. Acker") is an adult resident of the Commonwealth of Pennsylvania and of Mercer County.  He is, and was at all times relevant, the District Attorney of Mercer County, Pennsylvania.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 due to the questions of federal law involved in Counts I and II. This Court may exercise supplemental jurisdiction over Plaintiff's additional state law claim pursuant to 28 U.S.C. 1367(b), as this claim arises out of the same case or controversy.

5. Defendants are individual residents and/or political subdivisions of the Commonwealth of Pennsylvania and reside and/or are located within the Western District.

6. Venue is proper under 28 U.S.C. 1391(b).

7. Plaintiff has filed a claim with the Pennsylvania Human Relations Commission (PHRC) and the Equal Employment Opportunity Commission (EEOC) and has received right to sue letters from both agencies.

## FACTS

8. In February 2019, Plaintiff was employed in the Mercer County District Attorney's Office as the First Assistant District Attorney.  He had been employed in the District Attorney's Office for 22 years and had been the First Assistant District Attorney since February 18, 2013.

9. As an employee of the Mercer County District Attorney's Office, Mr. Farrone was, at all times relevant, an employee of Mercer County.  As an employee of Mercer County, Mr. Farrone was given a copy of the Mercer County Employee Handbook.

10. On or about February 1, 2019, Defendant Acker became the District Attorney for Mercer County.

2

11. In his capacity as District Attorney for Mercer County, Mr. Acker is an agent of Mercer County.  He has hiring and firing authority over County employees who work in the District Attorney's Office.

12. Mr. Acker has also advised employees of the District Attorney's Office that both the Office and employees thereof must follow the Mercer County Employee Handbook.

13. As a First Assistant District Attorney, Plaintiff reported directly to Mr. Acker.  Mr. Acker had authority over hiring and firing decisions with respect to Plaintiff.

14. Shortly after becoming District Attorney, Mr. Acker encouraged Plaintiff to be honest with him, stating: "If you think that I am full of s**t about something, tell me.  I don't hold grudges."

15. As the following factual account will demonstrate, however, Mr. Acker did not deliver on the above-stated promise when it came to Plaintiff's complaints about Mr. Acker's discriminatory conduct; in reality, Mr. Acker pretextually terminated Plaintiff for expressing honest concerns over Acker's treatment of women and/or disabled employees.

**Mr. Acker's Bullying and Harassment of Women in the DA's Office**

A. Plaintiff notices sexual discrimination against women in the DA's Office

16. Early in Mr. Acker's tenure as District Attorney, Plaintiff became aware of Mr. Acker's pattern of bullying and harassing women who worked in the DA's Office.  Plaintiff became aware that Mr. Acker berated, belittled, and disciplined women in an extreme manner which was disproportionate from how male employees were treated.

17. Examples of Mr. Acker's behavior towards women in the workplace included, but was not limited to:

    a.  Criticizing women, including other employees in the DA office, unfairly;

    b.   using gendered language such as "bitch" to describe women, including multiple employees in the DA's Office;

    c.   criticizing women for taking maternity leave and/or bringing children to the courthouse when men were not criticized for the same; and

    d.   imposing unequal discipline on women for infractions similar to those committed by men.

18. In one specific incident, Mr. Acker fired a woman who was employed in the Victim Witness Office for allegedly contradicting a male Assistant District Attorney in a meeting with victims, although the victims in question disputed that this occurred.

19. Mr. Acker did not terminate men for similar offenses. For example, on one occasion, Mr. Acker told a newspaper reporter that a male Assistant District Attorney had acted without authority in a preliminary hearing, but the employee was not fired for that perceived infraction.

20. Mr. Farrone witnessed the above-described behavior on multiple occasions and, after initially observing this behavior, raised concerns about Mr. Acker's treatment of women to multiple colleagues, including at least one fellow attorney.

<u>Mr. Acker's Targeted Harassment of a S., a Disabled Woman Working as an Assistant District Attorney</u>

21. After working under Mr. Acker for some time, Plaintiff became particularly concerned with Mr. Acker's mistreatment of one woman in particular, a colleague referred to herein as "S."[1]

---

[1] Out of respect for the privacy of the individual in question, the First Amended Complaint refers to her by her first initial rather than disclosing her full name.

22. S. was, at all times relevant, an Assistant District Attorney in the Mercer County District Attorney's Office. She had been a prosecutor in the DA's Office since 2014.

23. S.'s practice within the DA's Office focused on child sexual assault cases, which require particularly careful and tactful management because of the nature of the offenses involved.

24. Despite this, Mr. Acker repeatedly harassed and berated S. – both publicly and privately – over his belief that she was not moving cases along quickly enough.

25. Mr. Acker was repeatedly advised by S. and Mr. Farrone that his expectations for S.'s workflow were unrealistic. Nevertheless, he continued to pressure and bully her to move cases along.

26. Upon information and belief, Mr. Acker did not make such unreasonable requests of similarly situated male employees.

27. Additionally, at some point in the Fall of 2019, Mr. Acker told Mr. Farrone that S. had confided in him that she suffered from a specific disability/handicap which is protected under the Americans with Disabilities Act (ADA) and Pennsylvania Human Relations Act (PHRA). Therefore, Mr. Acker regarded S. as having a disability/handicap.

28. Farrone raised with Acker his objections to Acker's bullying of S. because she was a woman. Farrone also discussed with Acker the need for Acker to let Farrone handle management of S.'s work because of the mental health issue she had raised with Acker and Acker's continued bullying of her despite that.

29. In an effort to reduce the bullying of S. because she was a woman and to reduce the mental stress on S. because of Acker's bullying of her and as a reasonable

accommodation to S.'s mental health issues, Farrone asked and got Acker to promise to allow Farrone, rather than Acker, to interact with S. regarding management of her work.

30. Upon information and belief, Mr. Acker did not make or attempt to make a reasonable accommodation for S.'s condition, even after Mr. Farrone asked him to do so.

31. On May 15, 2020, after over a year of bullying and harassment at the hands of Mr. Acker, S. resigned her position.

32. In an email to the staff of the DA's Office regarding S.'s resignation, Mr. Acker claimed that S. was leaving "to pursue a new career opportunity."

33. Contrary to that assertion, S., a mother of three children, was constructively discharged, resigning her position without having another job lined up in order to escape Mr. Acker's targeted campaign of bullying and harassment.

34. Mr. Acker, however, refused to take any responsibility for his role in S.'s resignation. In his email to staff, Mr. Acker simply said that "it is the nature of the beast" and stated that S.'s resignation "ha[d] been brewing for months."

B. Plaintiff's efforts to oppose Mr. Acker's discriminatory conduct

35. Throughout Plaintiff's time working under Mr. Acker, and prior to the incident which precipitated his unlawful termination, he made an effort to resist Mr. Acker's discriminatory conduct in the following ways:

   a. Telling Mr. Acker to stop bullying women, including other Assistant District Attorneys;

   b. Specifically telling Mr. Acker to cease his public bullying of S. and advising him that his expectations for her workflow were unreasonable; and

     c. Asking Mr. Acker to meaningfully engage with S. about reasonable accommodations for her actual and/or perceived disability.

36. Plaintiff additionally brought Mr. Acker's gendered bullying of S. and others to the attention of Jennifer Hamilton, Mercer County's Director of Human Resources. Ms. Hamilton stated that she was aware of Mr. Acker's behavior, as were the County Commissioners, but were of the belief that, because Mr. Acker is an elected official, they could not do anything about it. She further stated that Mr. Farrone could confront Mr. Acker about his behavior, but that she expected that Mr. Acker might fire him as a result of any such confrontation.

37. Plaintiff's conduct in reporting his concerns was consistent with the directive of the Mercer County Employee Handbook. The Employee Handbook, in relevant part, states:

> "K. Reporting Information:
> 1. Employees are encouraged to disclose factual information which they believe evidences:
>     a. Violation of law, rule or regulation; or
>     b. Gross mismanagement or waste of funds, abuse of authority, or substantial and specific danger to public health and safety.
>
> 2. Employees shall be protected against reprisal for the disclosure of lawful factual information."

38. Despite Plaintiff's efforts to persuade Mr. Acker to stop his discriminatory bullying of S. and other women, these issues persisted, culminating in the constructive discharge of S. on May 15, 2020.

C. Mr. Farrone sends an email regarding Mr. Acker's treatment of S. and is terminated the next day

39. Following S.'s constructive discharge, on May 15, 2020, in an email to all staff in the DA's Office, Mr. Acker advised that "Brian [Farrone] and I will be discussing the reassignment of [S.'s] files."

40. The following day, Mr. Acker emailed Mr. Farrone and indicated that he would be transferring S.'s sex prosecution cases to him (Mr. Farrone), stating that another attorney in the office had been interested in taking on more sex crime cases but that said employee "wasn't ready."

41. On May 18, 2020, Mr. Farrone sent an email to Mr. Acker indicating that he did not wish to take on all of S.'s sex prosecution cases and that he was upset that Mr. Acker had continued to "harass" S., stating that it was Mr. Acker's harassment of S, which Mr. Farrone had asked Mr. Acker to cease and which Mr. Acker said that he would cease, that caused her to leave. Therein, Mr. Farrone noted that Mr. Acker's communications with S. regarding her workflow were "borderline threatening."

42. The very next day, on May 19, 2020, despite having just three days earlier indicated his desire to continue working closely with Mr. Farrone to manage the transition of S.'s cases, and without any discussion with Mr. Farrone, Mr. Acker fired Mr. Farrone by letter.

D. <u>Mr. Farrone is given termination letter with pretextual reasons for his firing</u>

43. Mr. Farrone was given a termination letter outlining the rationale for his termination. Therein, it was indicated that Mr. Farrone was terminated for:

     a. "abusing… vacation allotments";

     b. "arriving late and leaving early";

     c. using his "personal cell phone";

     d. "refusing" to take all of S.'s 8 ongoing sex cases; and

     e. "refusing to address [ADAs]" regarding moving cases forward.

44. The reasons stated above were pretextual.

45. Mr. Farrone had never been disciplined by Mr. Acker for any reason, much less the claimed bases for the termination.

46. Mr. Farrone had not abused his vacation days.  As a 22-year employee, Mr. Farrone had 24 vacation days per year, plus applicable carryover from the previous year, as well as four "flex days."   As of May 2020, Mr. Farrone had used just nine of his vacation days that year.  In mid-2019, Mr. Acker had miscalculated Mr. Farrone's vacation days and Mr. Farrone established that miscalculation.  Mr. Acker expressed satisfaction in mid-2019 with Mr. Farrone's vacation entitlement.  Almost a year later, however, this was used as a pretext for Mr. Farrone's termination.

47. Mr. Farrone also did not have issues with late arrival or early departure at the time of his termination.  To the contrary, just one day prior to S.'s resignation, Mr. Acker sent Mr. Farrone an email advising him that he should feel free to leave earlier given how early he was arriving to work.

48. Mr. Farrone had never been disciplined, formally or informally, for use of his personal cell phone prior to his termination.

49. The inclusion of these false bases for Mr. Farrone's termination indicates that the reasons given for his termination were pretextual.

50. The fact that Mr. Acker had been assigning Mr. Farrone additional work as recently as three days before his termination further indicates that Plaintiff's performance was not an issue at the time he was allegedly terminated for performance-based reasons.

51. The motivating factor in Mr. Farrone's termination was his opposition to the unlawful discriminatory practices of Mr. Acker in Mr. Farrone's email of May 18.

**COUNT I: Retaliation in Violation of Title VII of the Civil Rights Act of 1964**
Against Defendant Mercer County

52. The allegations of all previous paragraphs are incorporated as though fully set forth herein.

53. In the manner set forth above, Plaintiff opposed unlawful and discriminatory conduct on the basis of sex which was carried out by Mr. Acker against S. and others.

54. Mr. Acker took adverse action against Plaintiff by terminating his employment.

55. Plaintiff was terminated because of his May 18, 2020 email in which he opposed Mr. Acker's unlawful conduct.

56. Therefore, Plaintiff's termination was a retaliatory action prohibited by the Civil Rights Act of 1964.  42 U.S.C. §2000e-3(a).

57. Mercer County is vicariously liable for Mr. Acker's unlawful conduct, which was carried out by Mr. Acker, against a County employee, in his role as a supervisor with authority to make tangible employment decisions.

58. As a result of Defendant's unlawful adverse action, Mr. Farrone has sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefor.

59. As a result of Defendants' unlawful conduct, Plaintiff requests an award of damages, attorney's fees and such other relief as the Court deems appropriate.

**COUNT II: Retaliation in Violation of the Americans with Disabilities Act**
Against Defendant Mercer County

60. The allegations of all previous paragraphs are incorporated as though fully set forth herein.

61. In the manner set forth above, Plaintiff opposed unlawful and discriminatory and harassing conduct which was carried out by Mr. Acker against S., an individual with an actual and/or perceived disability, including failure to accommodate that disability.

62. Mr. Acker took adverse action against Plaintiff by terminating his employment.

63. Mercer County is vicariously liable for Mr. Acker's unlawful conduct, which was carried out by Mr. Acker, against a County employee, in his role as a supervisor with authority to make tangible employment decisions.

64. Plaintiff was terminated because of his email in which he opposed Mr. Acker's unlawful conduct.

65. Therefore, Plaintiff's termination was a retaliatory action prohibited by the Americans with Disabilities Act.  42 U.S.C. §12203(a).

66. As a result of Defendant's unlawful adverse action, Mr. Farrone has sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefor.

67. As a result of Defendants' unlawful conduct, Plaintiff requests an award of damages, attorney's fees pursuant to 42 U.S.C. § 12205, and such other relief as the Court deems appropriate.

### **COUNT III: Retaliation in Violation of the Pennsylvania Human Relations Act**
Against All Defendants, including Peter C. Acker individually

68. The allegations of all previous paragraphs are incorporated as though fully set forth herein.

69. In the manner set forth above, Plaintiff opposed unlawful and discriminatory conduct on the basis of sex and failure to accommodate a person with a disability/handicap, which was carried out by Mr. Acker against S., a woman with an actual and/or perceived disability/handicap.

70. Mr. Acker took adverse action against Plaintiff by terminating his employment.

71. Plaintiff was terminated because of his email in which he opposed Mr. Acker's unlawful conduct, which included bullying harassment of S. because of her sex, which bullying aggravated her disability and which also breached Acker's promise to allow Farrone, rather than Acker, to manage S.'s work.

72. Therefore, Plaintiff's termination was a retaliatory action prohibited by the Pennsylvania Human Relations Act. 43 P.S. §955(d).

73. Mercer County is vicariously liable for Mr. Acker's unlawful conduct which was carried out by Mr. Acker, against a County employee, in his role as a supervisor with authority to make tangible employment decisions.

74. Mr. Acker is a "person" as defined by 43 P.S. §954(a) and may therefore be held individually liable for his unlawful conduct. *See id.* at §955(d).

75. As a result of Defendant's unlawful adverse action, Mr. Farrone has sustained significant damages, including but not limited to: great economic loss, future lost earning capacity, lost opportunity, loss of future wages, loss of front pay, loss of back pay, as well as

emotional distress, mental anguish, humiliation, pain and suffering, consequential damages and has also sustained work loss, loss of opportunity, and a permanent diminution of earning power and capacity and a claim is made therefor.

76. As a result of Defendants' unlawful conduct, Plaintiff requests an award of damages, attorney's fees pursuant to 43 Pa. C.S. §962 and such other relief as the Court deems appropriate.

WHEREFORE, Plaintiff Requests that the Court enter judgment against the Defendants:

a) awarding monetary damages to compensate Plaintiff for the injuries described herein;

b) awarding attorney's fees and costs; and

c) awarding such other and further relief as the Court deems appropriate.

/s/ Walter P. DeForest
Walter P. DeForest, Pa. ID No. 05009
Oscar Heanue, Pa. ID No. 332335
DEFOREST KOSCELNIK & BERARDINELLI
436 Seventh Avenue, 30th Floor
Pittsburgh, PA  15219
Phone:  (412) 227-3101
Email:  deforest@deforestlawfirm.com
        heanue@deforestlawfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 19th day of September, 2023, true and correct copies of the foregoing First Amended Complaint, were served on the following counsel, in the manner shown:

Estelle McGrath, Esquire
Marshall Dennehey, P.C.
Union Trust Building
501 Grant Street, Suite 700
Pittsburgh, PA  15219
Email:  ekmcgrath@mdwcg.com
*Counsel for Defendant, Peter C. Acker*
*Via filing through the Court's CM/ECF system*

G. Jay Habas, Esquire
Marshall Dennehey, P.C.
717 State Street, Suite 701
Erie, PA  16501
Email:  GJHabas@mdwcg.com
*Counsel for Defendant, Peter C. Acker*
*Via filing through the Court's CM/ECF system*

Robert Vernon, Esq.
Gabriel Fera, P.C.
1010 Western Avenue, Suite 200
Pittsburgh, PA  15233
*Counsel for Defendant, The County of Mercer*
*Via First Class, United States Mail, postage prepaid*

/s/ Walter P. DeForest
Walter P. DeForest