**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PATRICK BRIAN FARRONE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 2:23-cv-01528-CCW |
| | : | |
| PETER C. ACKER and THE COUNTY OF | : | |
| MERCER, PENNSYLVANIA, | : | |
| | : | |
| Defendants. | : | |

**<u>DEFENDANT MERCER COUNTY'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT</u>**

## TABLE OF CONTENTS

**Page**

I.    Introduction ................................................................................................4

II.   Concise Statement of Undisputed Material Facts ...............................5

III.  Standard of Review .....................................................................................5

IV.   Argument .......................................................................................................6

    A. Even If Acker Retaliated Against Plaintiff, the Claim Against Mercer County Must Be Dismissed. ....................................................................6

        1.  Mercer County Is Not Farrone's Employer. ....................................6

        2.  Farrone Made No Report of Harassment to Mercer County..........10

    B. Mercer County Joins in Defendant Acker's Motion for Summary Judgment and Supporting Brief: There Was No Report of Discrimination or Harassment and No Retaliation for Protected Activity................12

        1.  Farrone Had a Personality Conflict over Management Style with His Boss....................................................................................................12

        2.  Unprofessional Comments, Even Sexual Ones, Do Not in Themselves Constitute Sex Discrimination or Harassment..........16

V.    Conclusion ..................................................................................................18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Conrail,* 297 F.3d 242 (3d Cir. 2002) ........................................................5

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ................................................6

*Barber v. CSX Distrib. Servs.,* 68 F.3d 694 (3d Cir. 1995) .........................................13

*Bowser v. Clarion Cnty.,* 206 A.3d 68 (Pa. Commw. Ct. 2019)................................8, 9

*Braden v. Cnty. of Washington,* No. 08-574, 210 WL 1664985 (W.D. Pa. Apr. 23, 2010) ...........8

*Celotex Corp. v. Catrett,* 477 U.S. 317 (1986) .............................................................5

*Covington v. Int'l Ass'n of Approved Basketball Offs.,* 710 F.3d 114 (3d Cir. 2013) ................7, 8

*Curay-Cramer v. Ursuline Acad. of Wilmington, DE,* 450 F.3d 130 (3d Cir. 2006)....................13

*Day v. Westmoreland Cnty.,* No. 2:20-CV-01710-MJH, 2021 WL 5015774 (W.D. Pa. Oct. 28, 2021) ........................................................................................................7,8

*DuPont-Lauren v. Schneider USA Inc.,* 994 F. Supp. 802 (S.D. Texas 1998) ............13

*E.E.O.C. v. Zippo Mfg. Co.,* 713 F.2d 32 (3d Cir. 1983)...............................................8

*Jones v. Sch. Dist. of Phila.,* 198 F.3d 403 (3d Cir. 1999) ........................................10

*Kaite v. Altoona Student Transp., Inc.,* 296 F. Supp. 3d 736 (W.D. Pa. 2017) ...........12

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574 (1986) ............5

*Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318 (1992) .......................................8, 9

*Newman v. Point Park Univ.,* No. 2:20-CV-00204, 2022 WL 969601 (W.D. Pa. Mar. 31, 2022) .......................................................................................................12

*Oncale v. Sundowner Offshore Servs.,* 523 U.S. 75 (1998)........................................17

*Ricci v. Matthews,* 2 A.3d 1297 (Pa. Commw. Ct. 2010)..........................................9, 10

*Sanchez v. SunGard Availability Servs. LP,* 362 F. App'x 283 (3d Cir. 2010)............10

ii

*Solomon v. Soc'y of Auto. Eng'rs,* 41 F. App'x 585 (3d Cir. 2002) ................................................6

*Spangler v. City of Phila.,* 523 F. App'x 142 (3d Cir. 2013) ......................................................17

*Young v. City of Phila. Police Dep't,* 651 F. App'x 90 (3d Cir. 2016) ...................................12

**Statutes**

16 Pa.C.S.A. § 12301(a)(11) .....................................................................................................7

16 Pa.C.S.A. § 14320(a) .....................................................................................................7, 8, 9

16 Pa.C.S.A. § 14321 .................................................................................................................7

16 Pa.C.S.A. § 14720 .................................................................................................................7

**Other Authorities**

F.C.R.P. 56(c) .............................................................................................................................5

Western District of Pennsylvania Local Rule 56(B)(1) .............................................................5

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PATRICK BRIAN FARRONE, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 2:23-cv-01528-CCW |
| | : | |
| PETER C. ACKER and THE COUNTY OF | : | |
| MERCER, PENNSYLVANIA, | : | |
| | : | |
| Defendants. | : | |

## DEFENDANT MERCER COUNTY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendant, Mercer County, by and through its undersigned counsel, Gabriel Fera, P.C., hereby files this Memorandum of Law in Support of Motion for Summary Judgment.

## I.    INTRODUCTION

The law does not hold parties responsible for discrimination or retaliation where they have no employment authority over the Plaintiff.  Where an entity has no ability to remedy discrimination if it exists, and no ability to prevent or remedy retaliation if it is occurring, it cannot be held liable.  In this case, Mercer County understands that its name is in the title of Mr. Acker. He is the Mercer County District Attorney, and Plaintiff worked in his office.  Moreover, Mercer County understands that both of those individuals draw their pay from the County treasury.  But Mr. Acker is an independently elected official, with full employment authority over his own employees.  Mercer County is the entity controlled by the Mercer County Commissioners and neither it, nor they, have authority to hire, fire, or supervise Plaintiff.  Mercer County is unable to discriminate against Plaintiff, and it could not remedy discrimination he reported if he had done so, nor could it retaliate against him in any way.  As a matter of law, Mercer County must be dismissed from this case because it is not Plaintiff's employer.

4

The foregoing notwithstanding, Mercer County joins in the arguments raised by Defendant Acker. Plaintiff had a personality conflict with his boss, the District Attorney, and he voiced that conflict, and not anything having to do with unlawful discrimination or harassment. The record is now very clear that Plaintiff's employment was terminated for reasons having to do with that conflict, and not for reporting or standing against any actionable conduct on the part of his employer, District Attorney Acker.

## II.    CONCISE STATEMENT OF UNDISPUTED MATERIAL FACTS

The factual basis for the County's Motion for Summary Judgment is set forth in a separate Concise Statement of Undisputed Material Facts (hereinafter the "SMF") pursuant to Western District of Pennsylvania Local Rule 56(B)(1) and is hereby incorporated by reference.

## III.    STANDARD OF REVIEW

The Court should grant a motion for summary judgment if it is established that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting F.R.C.P. 56(c)). Summary judgment must be granted if "a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Anderson v. Conrail*, 297 F.3d 242, 247 (3d Cir. 2002).

The moving party bears the initial burden of identifying evidence which shows the lack of a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). Once that burden has been met, the non-moving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Id.* at 587. An issue is genuine

only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

When opposing a motion for summary judgment, the non-moving party may not rely upon "unsupported assertions, speculation, or conclusory allegations to avoid a motion for summary judgment," but instead must point to specific material facts that contradict the facts presented by the movant and are themselves sufficient to establish genuine issues of material fact to be resolved at trial. *See Solomon v. Soc'y of Auto. Eng'rs*, 41 F. App'x 585, 586 (3d Cir. 2002).

## IV.    ARGUMENT

### A. Even If Acker Retaliated Against Plaintiff, the Claim Against Mercer County Must Be Dismissed.

#### 1. Mercer County Is Not Farrone's Employer.

The Court must understand that even though Defendant Acker is the Mercer County District Attorney and his employees, including Plaintiff, are paid through the County treasury, that does not mean that Mercer County (i.e. the Mercer County Commissioners) is an appropriate defendant.  It is not.

To establish a retaliation claim against Mercer County itself, Farrone must establish that Mercer County has employment authority over him and that he made a good faith report of prohibited conduct to it. He cannot do either.  The Mercer County District Attorney is an independently elected official with hiring, supervising, and firing authority over his own employees, and the County Commissioners have no authority over those matters.  Under Pennsylvania law, the only employment-related action the County can do with regard to the row offices of elected officials is set the salaries and compensation paid from the County treasury through the County salary board. Section 14720 of the County Code provides:

> The salaries and compensation of county officers shall be as provided under law. The salaries and compensation of all appointed officers and employees who are paid from the county treasury shall be fixed by the salary board established under section 14722 (relating to salary boards).... The powers authorized by the county commissioners under this section *shall not affect the hiring, discharging and supervising rights and obligations with respect to employees as may be vested in the judges or other county officers.*

16 Pa.C.S.A. § 14720 (emphasis added) (formerly cited as 16 P.S. § 1620).

The District Attorney is one of the elected row offices of the County pursuant to 16 Pa.C.S.A. § 12301(a)(11) (formerly cited as 16 P.S. § 401). As an elected official, the District Attorney therefore retains all hiring, firing, and supervising authority over the employees he appoints or hires, even if they are ultimately paid by the County treasury. Under the County Code, the District Attorney has the sole power to appoint Assistant District Attorneys:

> The district attorney may appoint assistants who are licensed to practice law in this Commonwealth to assist in the discharge of the district attorney's duties. The number of assistants and salary shall be fixed by the county salary board.

16 Pa.C.S.A. § 14320(a) (formerly cited as 16 P.S. § 1420). In instances where "more than one assistant district attorney is appointed, the district attorney shall designate one assistant as the first assistant." 16 Pa.C.S.A. § 14321 (formerly cited as 16 P.S. § 1421). It is solely the District Attorney who can appoint Assistant District Attorneys. The County has no control over such hiring decisions.

Both the Third Circuit and this Court have held that Title VII claims cannot be brought against Defendants that are not plaintiff's employer. *Covington v. Int'l Ass'n of Approved Basketball Offs.,* 710 F.3d 114, 119 (3d Cir. 2013); *Day v. Westmoreland Cnty.*, No. 2:20-CV-01710-MJH, 2021 WL 5015774 (W.D. Pa. Oct. 28, 2021). Here, Farrone must therefore prove that there was an employment relationship both with Mercer County and with Acker. The burden of establishing an employment relationship for the purpose of Title VII claims also falls upon the

plaintiff, not the defendant. *E.E.O.C. v. Zippo Mfg. Co.,* 713 F.2d 32, 35 (3d Cir. 1983). The Third Circuit looks to the factors set forth by the United States Supreme Court in *Nationwide Mutual Insurance Co. v. Darden,* 503 U.S. 318 (1992), to determine whether an employment relationship exists.

The employment relationship analysis in *Darden* and as adopted by the Third Circuit focuses on the level of control the defendant exerted over the plaintiff "by asking whether the defendant: (1) paid the plaintiff; (2) hired or fired the plaintiff; and (3) maintained control over the plaintiff's daily activities." *Day,* 2021 WL 5015774 at *6 (citing *Covington,* 710 F.3d at 119). While Farrone was paid from the Mercer County treasury, "funding salaries, providing human resources support, and handling benefits is insufficient to establish a county as an employer." *Day,* 2021 WL 5015774 at *6 (citing *Braden v. Cnty. of Washington,* No. 08-574, 2010 WL 1664985 (W.D. Pa. Apr. 23, 2010). The Pennsylvania Commonwealth Court has similarly found that "the County's duty and role with respect to issues such as funding, salary, benefits, and collective bargaining are simply not enough to establish a joint employer relationship." *Bowser v. Clarion Cnty.,* 206 A.3d 68, 78 (Pa. Commw. Ct. 2019). The mere act of Mercer County providing the funds for Farrone's position is not sufficient to establish the County as his employer, and Farrone cannot satisfy the first *Darden* criterion with respect to establishing Mercer County as an employer for Title VII purposes.

Nor can Farrone establish that the County hired or fired him. The District Attorney has statutory power under Section 14320(a) of the County Code to appoint Assistant District Attorneys. The County salary board has the authority to set the salaries, but the decision to hire Farrone (or any other Assistant District Attorney) rests solely with the District Attorney of the County. The District Attorney was solely responsible for firing Farrone, too. The termination letter to Farrone

was printed on letterhead of the District Attorney's Office and signed only by Acker, who stated in the letter, "I have decided to terminate your employment with this office." ECF No. 28-2. The letter did not state that Farrone was terminated from County employment, as Farrone worked solely for the District Attorney's Office. The County has no power over hiring or firing employees of row offices like the District Attorney's Office. "The Row Officers have the power to both appoint and remove Row Employees…The removal power of the Row Officers is exclusive." *Ricci v. Matthews,* 2 A.3d 1297, 1301 (Pa. Commw. Ct. 2010) (internal citations omitted). Farrone fails to meet the second *Darden* criterion for establishing an employment relationship with the County.

Farrone similarly fails to satisfy the third *Darden* criterion because the County did not direct Farrone's daily work activities. Acker was solely responsible for assigning Farrone's work, supervising him, and evaluating his performance. Section 14720 of the County Code specifically reserves supervisory rights to the District Attorney as a row officer, giving no authority to the County to supervise Farrone. Farrone has shown no evidence that the County had any control or influence over his daily work activities; to the contrary, he alleges only that Acker's assignments reflect too-high expectations. Indeed, his visits with County Human Resources Director Jennifer Hamilton confirmed that the County did not have any authority over how Acker ran the District Attorney's Office. Farrone may assert that he was an employee of the County because both he and Acker received a County employee handbook and are paid by the County. Nevertheless, "an employee's perceptions based on correspondence that describes a county as an employer is marginally relevant." *Bowser,* 206 A.3d at 78. The reality of the circumstances is that the County did not have any supervision of Farrone, and it is statutorily prohibited from doing so by virtue of the County Code. The County Code may "provide the Commissioners with the general authority

to run county business, [but] there are specific provisions in the Code which establish that the Row Officers have supervisory authority over the Row Employees." *Ricci,* 2 A.3d at 1301.

Therefore, because the County did not and does not have the authority to take any materially adverse employment action against Farrone there can be no claim against the County as a matter of law.

### 2.    Farrone Made No Report of Discrimination of Harassment to Mercer County.

Even if the foregoing were not accurate (which it is), to establish a causal link between the protected activity and the adverse employment action, the Plaintiff must show that the individual who was responsible for his termination was aware of his complaints of discrimination. *Sanchez v. SunGard Availability Servs., LP*, 362 F. App'x 283, 288 (3d Cir. 2010); *see also, Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 415 (3d Cir. 1999). The evidence developed through discovery now shows plainly that Farrone never reported discrimination or harassment to Mercer County.  Even though Farrone did speak with the Mercer County Human Resources Director, Ms. Hamilton, about his concerns that some of the ADAs may leave the office because of Mr. Acker's harsh treatment of them, both he and Joan Mooney explicitly denied that Acker was engaging in discriminatory behavior against any particular group. App. B at pp. 22-24.  In her deposition, Ms. Hamilton testified as follows:

> Sure. So what I recall from the conversation for sure is we discussed different attorneys and different things that were going on. And I remember very specifically telling Joan and Brian, that's why -- this is what I specifically remember about those conversations, was that Mr. Acker was newer and he had a different style than they were used to, and I encouraged them to talk to Mr. Acker. I said, do you feel comfortable talking to Mr. Acker about how you guys don't agree with his style of managing, how you feel maybe he's being too harsh on the attorneys, and they said yes, they were talking to him about that. I said, because he's the boss and he might have a different style than you guys, but you've got to make it work somehow because what's the solution if you aren't on the same page as your boss and he's not going to change his mind, you guys have to figure out how

> to work as a team together to manage this staff. That was the gist of our conversation. I do remember specifically asking, as I always ask, are there employees that you feel -- groups of employees that you feel he's being targeting or being treated differently, and the answer from Mr. Farrone and Mrs. Mooney was absolutely not, he's equally mean to everybody.

*Id.* at p. 21, line 21 – p. 22, line 20. Moreover, Shane Crevar and Dan Gleixner (both male ADAs) also complained to Farrone about Acker's management style, even going so far as to question whether it was ethical, according to Farrone. App. A at pp. 86-89.

From the perspective of Mercer County, therefore, Mr. Farrone was an employee over whom it had no control who was seeking advice on navigating a personality conflict with the new District Attorney. As far as Ms. Hamilton was concerned, there was nothing to investigate because Mr. Farrone and Ms. Mooney were concerned about "working with their boss, who was newer and had a different management style than they were used to." App. B at p. 24. Ms. Hamilton testified:

> Brian and I both know the deal. We both worked for elected officials. And so they decide who works for them and who doesn't. So Brian was expressing and had a different management style than he enjoyed with Mr. Acker [sic]. Mr. Acker has a different management style than Brian, and I don't know which one's right or wrong. That's not for me to judge. But, you know, the discussion was, you know, we're employees of those elected officials. I've had that conversation with other first deputies who weren't getting along with their elected official boss. You got to figure out how to make it work or you got to make a decision. Right? You got to make a decision whether you want to work there anymore or not or whether you want to push it or whether you want to try to make it work. And that's the honest discussion to have with someone.

*Id.* at pp. 26-27. Farrone did not report discrimination, only that attorneys were leaving because of Acker. App. A at pp. 121-23. Male and female attorneys were leaving. Greg Reichart, Dave Wenger, and all three of the attorneys recruited by the prior District Attorney, Miles Karson— Shane Crevar, Dan Gleixner, and Kara Rice—left. *Id.* at p. 67, 116; App. B at p. 38.

Farrone also alleges he spoke to two County Commissioners about Acker, but according to his own testimony, he did not report any discriminatory behavior to them either. Rather, Farrone

said that Commissioners McGonigle and McConnell both asked Farrone to try to get Acker to stop sending emails because of the turnover in the office. App. A at pp. 122-124. No one said they thought it was discriminatory.

Farrone therefore cannot meet any element of a retaliation claim because he simply never made any complaints about discrimination or harassment. Farrone's recollection was that Ms. Hamilton told him there was nothing she could do because Acker is an elected official (*Id.* at p. 121). But there is no evidence from Mr. Farrone supporting any allegation or inference that he reported sex harassment or discrimination to Ms. Hamilton. Ms. Hamilton says he specifically denied that when she asked about it. Farrone does not specifically state that he made such a report (*see Id.* at p. 121 and generally), he has produced no email or written communication doing so, and he declined to produce any evidence from Joan Mooney, who was also present in the meeting with Ms. Hamilton. At this stage in the litigation, the absence of specific evidence on this point is fatal to his claim against Mercer County.

**B. Mercer County Joins in Defendant Acker's Motion for Summary Judgment and Supporting Brief: There Was No Report of Discrimination or Harassment and No Retaliation for Protected Activity.**

**1. Farrone Had a Personality Conflict over Management Style with His Boss.**

To establish a prima facie case of retaliation under Title VII, a plaintiff must show that "(1) [he] engaged in [a protected] activity"; (2) "the employer took an adverse employment action against [him]"; and (3) "there was a causal connection between [his] participation in the protected activity and the adverse employment action." *Kaite v. Altoona Student Transp., Inc.,* 296 F. Supp. 3d 736, 743–44 (W.D. Pa. 2017), quoting *Young v. City of Phila. Police Dep't,* 651 F. App'x. 90, 95 (3d Cir. 2016). The Third Circuit applies the "same standard for a retaliation claim" whether raised under Title VII or the PHRA. *Newman v. Point Park Univ.,* No. 2:20-CV-00204, 2022 WL

969601, at *15 (W.D. Pa. Mar. 31, 2022). It is well established that simple complaints of a general nature cannot sustain a claim of retaliation under Title VII. Employees who wish to bring retaliation claims must identify the employment practice complained of, at least by context. *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995); *DuPont-Lauren v. Schneider USA Inc.*, 994 F.Supp. 802 (S.D. Texas 1998); *Curay-Cramer v. Ursuline Acad. of Wilmington, DE*, 450 F.3d 130, 134-35 (3d Cir. 2006). That means that, at this stage of the case, there should be clear facts (documents or testimony) Farrone is pointing to to show that Mercer County knew actionable discrimination or harassment was taking place and that he was terminated by Mercer County because of it.

Farrone claims that his email to Mr. Acker on May 18, 2020 was what precipitated his termination. That email states in full:

> Do you think that the e-mails that you sent to [S.] were nice? They were borderline threatening. Additionally, you had promised that you would let me handle [S.], but you chose to keep harassing her on her cases. What did you think was going to be the result. She left without another job and three children to support. What does that tell you? I'm not sure why you think my duties are not full time. I will tell that in addition to the informations that I review and assign. I spend a huge amount of time dealing with the concerns of the remaining ADAs, as well as other entities that interact with our office. I'm not sure why you feel that these files are my responsibility, when you continued to micro-manage her handling of the cases, despite your agreement to let me, and ultimately were the direct cause of her departure. I know you were concerned about her moving her cases, but as far as I know she never lost any cases to Rule 600. This is the criminal world not the civil world. I just don't think you understand the difference. These cases are not just about money, there are a lot of other aspects that come into play. [S] may not have been the most aggressive prosecutor, but she was not a good employee, who came to work and did her job, until she felt it was impossible to continue working here. It is hard to watch these young attorney's confidence being undermined by being second guessed instead of encouraged. You had several extremely competent trial attorneys who left because of your behavior. As a result, I am now expected to carry the burden that you have created? I'm not sure I am capable of prosecuting these cases to your satisfaction or within your very strict timeline. Maybe, you should take all these cases to make sure they are handled to your

satisfaction and it would also give you some insight as to why cases don't
get resolved as quickly as you would like.

ECF No. 19-2.

A section-by-section review of that email is illustrative of the gap that Farrone had to fill
to survive summary judgment.  Farrone began his email by asking if Acker thought his emails to
"S" "were nice," and then Farrone answered his own question by stating that they were "borderline
threatening."  Because neither insinuating Acker was "not nice" or that he was "borderline
threatening" would in themselves put Mercer County on notice that discrimination or harassment
based on a Title VII protected status was occurring, Farrone had a burden to produce some
evidence bridging the gap.  Yet there is nothing in the record that would allow the reader of
Farrone's email to look back now and understand that when he wrote "not nice" and "borderline
threatening" he meant to indicate sex discrimination or harassment in a way that should have, in
context, been understood by Defendant Mercer County.  Stated differently, there is no testimony
of a witness or an additional document that has been produced through discovery, that would tend
to show that Mercer County knew Farrone was reporting discrimination or harassment in his email.
Both Farrone and Ms. Hamilton have now testified about their conversations at the time.  In that
testimony, Mr. Farrone has not added anything relevant except that he admits he never said sex
harassment or discrimination, and Ms. Hamilton testified that Farrone denied that there was
discrimination or harassment when she specifically asked him.  So "not nice" and "borderline
threatening" remain at this stage, bones with no actionable allegations—no Title VII flesh, on
them.

Mr. Farrone's email next stated that Acker promised that he would let Farrone "handle S,"
but that Acker kept harassing "S" "on her cases."  Here the word "harassment" actually made an
appearance, but it is impossible, without more, for the reader to know whether Farrone meant

prohibited harassment under Title VII or just harassment of the type that "not nice" supervisors do towards employees whom they perceive to be underperforming. It was Farrone's burden through discovery to produce some shred of evidence for this Court to understand that it was the former and not the latter, and that Mercer County knew or should have known it. As stated above, he has not done so because what thin record there is suggests that harassment or discrimination was *not* what he meant. Ms. Hamilton specifically asked him this and he denied it and there simply is no other place in the record credibly indicating otherwise.

The rest of the body of Mr. Farrone's email was a tirade against Acker's management style and/or in pursuit of Farrone's own interest:

> I'm not sure why you think my duties are not full time…I spend a huge amount of time dealing with the concerns of the remaining ADAs…I'm not sure why you feel that these files are my responsibility…
> …
> you continued to micro-manage…I know you were concerned about [S] moving her cases…
> …
> This is the criminal world not the civil world. I just don't think you understand the difference…
> …
> [S] may not have been the most aggressive prosecutor…
> …
> It is hard to watch these young attorney's confidence being undermined by being second guessed instead of encouraged. …several extremely competent trial attorneys…left because of your behavior…
> …
> I am now expected to carry the burden that you have created? I'm not sure I am capable…
> …
> Maybe, you should take all these cases to make sure they are handled to your satisfaction...

*Id.*

Mercer County is without the expertise in the running of a district attorney office to express an opinion about the rightness or wrongness of Mr. Farrone's points, but we are able to read. None

of what is there in his email obviously had anything to do with *discrimination or harassment.* Farrone believed Acker did not trust the ADAs' judgment or work ethic generally (App. A at p. 153) and characterized Acker's criticism of all the ADAs when cases were continued as "unfair" because the continuances were being granted over the ADAs' objections. *Id.* at p. 155. The record shows that moving cases to resolution was Acker's main focus and the criticism he levied on his ADAs for not moving them was Farrone's chief complaint. *Id.* at pp. 113-14, 128, 155, 159-60, 237. That disagreement was not discrimination based on a protected classification, nor did Farrone ever allege that it was. When asked why he stayed on as the First ADA, even though he knew he could not meet Acker's expectations, Farrone said it was to protect the younger attorneys and he specifically referenced a male attorney in his answer, Shane Crevar, whom Farrone claims "begged" him to stay. What Farrone did not say, was that he remained on to protect anyone from any type of actionable discrimination or harassment. *Id.* at p. 231.

At this stage of the litigation, there must be *something more in the record* that tends to establish Plaintiff's claims, or the case must be dismissed. This email made no mention of the treatment of any employee based on a protected characteristic and was instead only a general complaint of unfair treatment. There is nothing more in the record, because what Farrone is attempting to establish—that he complained to Mercer County about actionable discrimination or harassment—simply is not true. The email, on its face, shows that Farrone did not like Mr. Acker's management style and, perhaps regrettably, he chose to tell him about it in an email. Because he cannot point to credible evidence showing that he reported discrimination or harassment under Title VII to Mercer County, his claim against Mercer County must be dismissed.

### 2. Unprofessional Comments, Even Sexual Ones, Do Not in Themselves Constitute Sex Discrimination or Harassment.

16

In *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75 (1998), the Supreme Court explained that mere sexualized comments, by themselves, do not constitute sex discrimination or harassment in violation of Title VII:

> We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. "The critical issue, Title VII's text indicates, is whether members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed."

*Oncale,* 523 U.S. at 80. (internal citations omitted). And it went on to explain that:

> The prohibition of harassment on the basis of sex requires neither asexuality nor androgyny in the workplace; it forbids only behavior so objectively offensive as to alter the "conditions" of the victim's employment. "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview."

*Id.* at 81. (internal citations omitted).

Plaintiff in this case has indicated that Mr. Acker referred to one female employee as a "b*tch" when she was in court (see Concise Statement of Undisputed Material Facts at ¶ 37) and on one occasion, used a highly offensive term to refer to a victim in a case before the office (*see Id.* at ¶ 39).  The evidence produced through discovery makes clear, however, that in the first example, Mr. Acker intended the "b*tch in court" comment to be complimentary, essentially like calling one of his attorneys a "bulldog."  The second example was an explanation of his view of how the court and/or jury would view a victim in their case—a frank, if rough, description of a perception he thought his lawyers would have to contend with.  These comments, without more, cannot constitute sex discrimination or harassment as a matter of law.  *See e.g., Spangler v. City of Phila.*, 523 F. App'x. 142, 146 (3d Cir. 2013) (*Calling an employee a "b*tch" does not constitute discrimination merely because the word has sexual connotation*).

17

## V.    <u>CONCLUSION</u>

WHEREFORE, Mercer County respectfully requests that this Court grant its Motion for Summary Judgment by dismissing Plaintiff's claims in their entirety because there are no genuine issues of material fact, and the County is entitled to judgment as a matter of law.

Respectfully Submitted,

GABRIEL FERA, P.C.

Date: April 2, 2025                By: */s/ Stephanie L. Fera*
                                              Stephanie L. Fera (PA 314392)
                                              Christopher P. Furman (PA 89822)
                                              1010 Western Avenue, Suite 200
                                              Pittsburgh, PA 15233
                                              Tel: (412) 223-5815
                                              sfera@gabrielfera.com
                                              cfurman@gabrielfera.com

                                              *Counsel for Defendant Mercer County*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 2nd day of April 2025, I electronically filed true and correct copies of Defendant Mercer County's Memorandum of Law in Support of Motion for Summary Judgment with the Clerk of Court using the EM/ECF system, which will send notification of such filing to all counsel of record.

Date: April 2, 2025                    By: *<u>/s/ Stephanie L. Fera</u>*
                                       Stephanie L. Fera (PA 314392)
                                       Christopher P. Furman (PA 89822)
                                       1010 Western Avenue, Suite 200
                                       Pittsburgh, PA 15233
                                       Tel: (412) 223-5815
                                       sfera@gabrielfera.com
                                       cfurman@gabrielfera.com

                                       *Counsel for Defendant Mercer County*