IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK BRIAN FARRONE, | |
| Plaintiff, | Civil Docket No.: 2:23-cv-1528 |
| v. | |
| PETER C. ACKER; and THE COUNTY OF MERCER, PENNSYLVANIA, | |
| Defendants. | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT
COUNTY OF MERCER, PENNSYLVANIA'S MOTION FOR SUMMARY JUDGMENT**

AND NOW comes Plaintiff, Patrick Brian Farrone, by and through his undersigned counsel, who hereby respectfully requests that this Court deny Defendant County of Mercer, Pennsylvania's (henceforth, "Mercer County" or the "County") Motion for Summary Judgment for the reasons set forth below.

**INTRODUCTION**

The present dispute concerns Mr. Farrone's abrupt, public firing from Mercer County's District Attorney's Office after Mr. Farrone voiced his opposition to Defendant Peter C. Acker's sexist and ableist harassment of a particular Assistant District Attorney ("ADA") – *i.e.*, "S". Mr. Acker's abuse – which afflicted both S specifically and other female employees – entailed, *inter alia*, disproportionate chastisement and supervision of female employees or employees suffering from disabilities; use of explicitly sexual derogatory terminology (including "bitch" and "cum dumpster") to describe female employees and female sex crime victims; extreme, public hostility towards female persons, including Mr. Acker's own daughter, for having children or being parents; and reticence to grant female employees leave to work from home during the Covid-19 pandemic, as required by federal law, and questioning the authenticity of such employees' needs. Prior to his

1

firing, Mr. Farrone had repeatedly made his concerns regarding this abusive and discriminatory behavior known to both Mr. Acker directly and to Mercer County through conversations with Human Resources. Mr. Farrone has testified to such conversations at his deposition, and he has a witness, Joan Mooney, prepared to testify in support thereof. Despite this evidence, Mercer County now baldly insists to this Court that Mr. Farrone never engaged in any form of protected speech, and that Mr. Farrone was not fired for any such conduct. Further, Mercer County asserts, in contravention of its previous filings, that Mercer County did not employ Mr. Farrone, and, thusly, that Mercer County is not a proper party to this lawsuit. These assertions are not only unfounded and unavailing but also raise several issues of material fact that preclude the entry of summary judgment. Accordingly, summary judgment must be denied.

## CONCISE STATEMENT OF MATERIAL FACTS

The factual basis for Mr. Farrone's Response in Opposition to Mercer County's Motion for Summary Judgment is set forth in a separate Concise Statement of Undisputed Material Facts (hereinafter, the "SMF"), filed pursuant to Western District of Pennsylvania Local Rule 56(B)(1), which is hereby incorporated by reference. References to exhibits contained herein refer to the items designated in and attached to the SMF.

## APPLICABLE LEGAL STANDARD

Under Fed. R. Civ. Pro. 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the nonmoving party. *Kaucher v. Cty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (*citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

As the movant, Mercer County bears the burden of demonstrating "an absence of a genuine issue of material fact by showing the [C]ourt that there is no evidence in the record supporting the nonmoving party's case." *Husick v. Unum Life Ins. Co. of Am.*, 2024 WL 4476554, at *2 (E.D. Pa. 2024) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Only where the record, "taken as whole, could not lead a rational trier of fact to find for the nonmoving party" should summary judgment be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). For the reasons provided below, Mercer County has not met this burden, and, accordingly, summary judgment should be denied.

## ARGUMENT

Mercer County essentially makes three arguments in support of its Motion for Summary Judgment, none of which are availing:

**First**, Mercer County asserts that it did not "control" Mr. Farrone enough for him to be deemed an "employee" of Mercer County – despite admittedly paying Mr. Farrone; supplying him with a Mercer County employee handbook, overseeing human resources issues in the office; and controlling all aspects of Mr. Farrone's salary, benefits, and the overall existence of his position. Now asserting that it did not employ Mr. Farrone, Mercer County contends that it is not a proper party to this lawsuit. ECF No. 55 at 6-10. This argument, however, misstates the law and ignores critical facts that establish the County's heavy involvement in, and responsibility over, the District Attorney's Office. That involvement, as explained in detail below, is more than sufficient to establish an employer-employee relationship between Mr. Farrone and Mercer County.

**Second**, Mercer County asserts that, even were they considered Mr. Farrone's employer (which they are), there is no evidence establishing that Mercer County was made aware of any discriminatory conduct or reports made by Mr. Farrone. *Id.* at 10-12. Not only does this argument

incorrectly presume that Mercer County had to be independently informed by Mr. Farrone of Mr. Acker's wrongdoing to be held liable under Title VII and the PHRA, but it also ignores substantial evidence indicating that Mr. Farrone directly informed the County about Mr. Acker's discriminatory harassment of women and S in particular. Summary judgment simply cannot be justified in the face of such evidence.

**Third**, and finally, Mercer County asserts that, even were its above two arguments to fail, Mr. Farrone neither engaged in protected speech nor was fired for making any such statements. *Id.* at 12-17; ECF No. 58 at 9-17. These arguments mirror those raised in Mr. Acker's Motion for Summary Judgment and can be similarly dispelled: Simply put, Mr. Farrone's communications, owing to the conversations he previously had with Mr. Acker and others, can clearly be understood by the reasonable mind to contest discrimination. The only argument in this regard raised by Mercer County but not Mr. Acker is the notion that isolated usage of discriminatory terminology – in this case, the word "bitch," which Mr. Acker used to describe female ADAs – cannot justify Title VII and PHRA claims. This assertion manages to both be incorrect and fundamentally mischaracterize the type and scope of conduct Mr. Acker engaged in. As explained in more detail below, and in Mr. Farrone's Response in Opposition to Mr. Acker's Motion for Summary Judgment, Mr. Acker's abuse was persistent, malignant, and ever-present – extending far beyond what could be considered isolated incidents. The claims now raised against Mr. Acker and Mercer County are undoubtedly justified in the face of this conduct and the abject failure to stop it.

I.     **Mercer County was Mr. Farrone's employer.**

Regarding the County's first argument, it is beyond doubt that Mr. Farrone was an employee of Mercer County. The County Commissioners had to approve the hiring of Mr. Farrone's and all other employees in the District Attorney's Office. Exh. 24, Farrone Declaration, ¶ 4. The County set Farrone's salary, pension and other benefits. *See, for instance*, Exh. 5,

4

Hamilton Tr., at pages 43-46.  The County issued an Employee Handbook to County employees, including those in the District Attorneys Office.  Exh. 5, Hamilton Tr. at page 41, lines 21-24.  The Employee Handbook governs all working conditions for County employees.  *See* Exh. 6, Table of Contents, Bates labeled Acker-0173.  In fact, Jennifer Hamilton was the EEO Officer for all County employees, including Farrone.  Exh. 5, Hamilton Tr. at page 42, lines 10-23.  The Employee Handbook provided the protections from violation of the Americans with Disabilities Act and the Pennsylvania Human Relations Act to all County Employees.  *See* Exh. 6, at pages 6-11.  Further, Mercer County has repeatedly referred to Mr. Farrone as an employee throughout this litigation.  In Mercer County's Answer to Plaintiff's Amended Complaint, for instance, Mercer County "[a]dmitted" that Mr. Farrone "was employed by Mercer County."  ECF No. 30, ¶ 9.[1]  While Mercer County claimed they did not have the authority to "hire, fire, or supervise" Mr. Farrone in that response, that is not unique to a dual-employer structure and does not change the fact that Mercer County acknowledged him to be their employee.  *Id.*  Moreover, the County Commissioners had to approve the hiring of any employees who worked in the District Attorney's Office.  Exh. 24, Farrone Declaration, ¶ 4.  Similarly, Mercer County's Brief in Support of its Motion to Dismiss Plaintiff's Amended Complaint described Mercer County "as Plaintiff's employer" and Mr. Acker as "Plaintiff's manager."  ECF No. 22 at 2, 9.  These statements constitute judicial admissions and are preclusive as to any contradictory argument.  *See John B. Conomos, Inc. v. Sun Co., Inc. (R&M)*, 831 A.2d 696, 712 (Pa. Super. 2003) ("[s]tatements of fact by one party in pleadings, stipulations, testimony, and the like, made for that party's benefit, are termed judicial admissions and are binding on the party"); *see also Wills v. Kane*, 2 Grant 60, 63

---

[1] Mr. Acker likewise "[a]dmitted that Plaintiff was an employee of Mercer County."  ECF No. 28, ¶ 9.  Accordingly, both Mr. Acker and the County considered Mr. Farrone an employee of Mercer County until now.

(Pa.1853) ("[w]hen a man alleges a fact in a court of justice, for his advantage, he shall not be allowed to contradict it afterwards. It is against good morals to permit such double dealing in the administration of justice"); *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 211, at n. 20 (3d Cir. 2006) ("concessions in pleadings or briefs" are "[j]udicial admissions" that "bind the party who makes them"); *Anderson v. C.I.R.*, 698 F.3d 160, 167 (3d Cir. 2012) ("admissions in pleadings, stipulations or the like" are "[j]udicial admissions" that "do not have to be proven in the … litigation" (internal bracketing removed)); *Workmen's Comp. Appeal Bd. v. Am. Mut. Liability Ins. Co.*, 339 A.2d 183, 186 (Pa. Commw. 1975) (whether an employer-employee relationship exists can only be deemed a question of law "where the facts are undisputed"); *Reeves v. Mobile Dredging & Pumping Co., Inc.*, 26 F.3d 1247, 1253 (3d Cir. 1994) ("[t]he existence of the employment relationship is a question of fact").

Despite this, however, Mercer County insists on asserting that it never "controlled" Mr. Farrone to the point that he would be considered an "employee" of Mercer County under the standards enumerated in *Nationwide Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992). *Darden* and related cases provide that, when determining whether a defendant employed a plaintiff, the Court should consider whether the defendant "(1) paid the plaintiff; (2) hired or fired the plaintiff; and (3) maintained control over the plaintiff's daily activities." *Day v. Westmoreland County*, 2021 WL 5015774, at *5 (W.D. Pa. 2021) (*citing Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 119 (3d Cir. 2013). Mercer County admits that they paid Mr. Farrone (*see* ECF No. 55 at 8) but argue that they neither hired/fired him nor controlled his daily activities. This argument by Mercer County is simply incorrect.

First, it is abundantly clear on the face of the record that Mercer County could get involved in department affairs if they chose or were otherwise required to do so. For instance, in Jennifer

6

Hamilton's deposition, it was admitted that the County could and would intercede in any department if they learned employee abuse was occurring:

> Q: [I]f Mr. Acker were abusive toward employees, if that were true, it would have been your place to become involved in that; wouldn't it?
>
> * * *
>
> A: Yeah, I think if I found out any department head in the County or elected official was becoming abusive to their employees, I would get involved.

Hamilton Deposition, Exh. 5 at 34-35.  This obligation is enshrined in the Mercer County employee handbook, which specifically protects Mercer County's "employees" from conduct "creating an intimidating, hostile or offensive work environment."  Exh. 6 at 16.  That Employee Handbook set the terms and conditions of all aspects of employment by the County.  *See Id.* at Table of Contents, and pages 35-40; *see also* Exh. 5, Hamilton Tr. at 41 (confirming the Handbook would have applied to the District Attorney's Office).  Clearly then, employees of the District Attorney's Office must be considered Mercer County employees if, as Ms. Hamilton's testimony provides, the protection described in the employee handbook extends to them.

Second, there is evidence in the record establishing that Mercer County *has* interceded or involved themselves in department affairs.  For example, Ms. Hamilton noted that the County requires its employees – notably including Mr. Farrone and Mr. Acker – to participate in yearly sexual harassment trainings.  Exh. 5, Hamilton Tr. at 38-39.  The County also gave their employee handbook to persons employed by the District Attorney's Office – once again, including Mr. Farrone (*see* Exh. 5 at 41) – which indicated the County could (and did) implement "work rules" that affected ADAs, required ADAs to comport themselves in accordance with conduct standards, held ADAs in compliance with a confidentiality agreement, and noted that immediate dismissal was a possible ground for engaging in prohibited activities.  Exh. 6 at 35-40.  One rule included in

7

the handbook notably required managers, such as Mr. Farrone, to investigate any sexual discrimination they observed and "[t]ake appropriate action to prevent … prohibited conduct from recurring." *Id.* at 17. If managers did not comply with this rule, such as by "fail[ing] to immediately investigate a report," they risked termination. *Id.* This rule alone is more than sufficient to prove Mr. Farrone was an employee of Mercer County, at least insofar as reporting discrimination and retaliation is concerned. Simply put, Mercer County cannot require department managers to stop discrimination and simultaneously allow managers to be harmed for complying with that requirement. However, at its core, that is precisely what Mercer County argues.

Additionally, Ms. Hamilton admitted to extensive and regular interactions with District Attorney's Office staff concerning the daily affairs and conditions of the office. *See, for instance,* Exh. 5, Hamilton Tr. at 16 ("Brian would come down sometimes to talk to me about various things, and it was even before the time of Peter Acker"), 18 ("[o]ftentimes Brian or Joan [Mooney, the office manager (*see* Exh. 8, Acker Tr, at 50),] would come down to my office to talk about several issues. … I can't even begin to tell you" how many times Mr. Acker was one of the topics discussed); 26 ("I can remember talking to Brian often, whether it was … in the hallway about various things or other things going on in the County"); 29 (Ms. Hamilton had conversations with Mr. Acker about staffing and S). Clearly, the County was nowhere near what may be considered removed from the day-to-day affairs of the District Attorney's Office.

Involvement of this sort and scope has proven sufficient previously under the *Darden* standards to justify holding two entities were "joint employers" of a single employee. *See, for instance, Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215-17 (3d Cir. 2015) (holding defendant jointly employed plaintiff with another party for the purposes of a Title VII claim because, *inter alia*, defendant "bore certain responsibilities with respect to the temporary employees' wages,"

made payments "functionally indistinguishable from direct employee compensation," could control whether a position was accessible to the plaintiff, and characterized the plaintiff as an employee); *Graves v. Lowery*, 117 F.3d 723, 227-29 (3d Cir. 1997) (sex discrimination case filed by seven former judicial clerks was allowed to proceed against the County because "the [c]lerks were covered by the [c]ounty's personnel policies," "received pins for excellent service from the [c]ounty," and were paid by the county). The result here, on the clear facts in the record, is much the same: Mr. Farrone is undoubtedly jointly employed by Mr. Acker and Mercer County.

## II. Mr. Farrone repeatedly made Mercer County aware of Mr. Acker's discriminatory conduct through conversations with Human Resources.

Regarding the County's second argument, Mercer County seems to presume that the claim against them requires Mr. Farrone to prove (1) that *he*, independent of anyone else, made Mercer County aware of the abuse, and (2) that Mercer County independently retaliated against Mr. Farrone. Both of these presumptions are incorrect. It is well-established that "[t]he inaction of executive and management personnel may serve as a basis for liability under Title VII even where these high-level employees have played no direct role in the alleged discrimination." *Graves*, 117 F.3d at 729, n. 12 (*quoting Kinnally v. Bell of Pennsylvania*, 748 F.Supp. 1136, 1142 (E.D. Pa. 1990)); *see also Taylor v. Jones*, 653 F.2d 1193, 1199 (8th Cir. 1981) (noting that "toleration of a discriminatory atmosphere alone gives rise to a cause of action"); *Lopez v. S.B. Thomas, Inc.*, 831 F.2d 1184, 1186 (2d Cir. 1987) (employer with knowledge that co-workers are sexually harassing employees "may not stand idly by"). Accordingly, so long as there is evidence that Mercer County either subjectively knew or reasonably ought to have known about Mr. Acker's abusive conduct, then a retaliation claim can and should be predicated against them. There is extensive evidence establishing both Mercer County's subjective awareness of the situation and grounds for the reasonable awareness thereof.

For example, Mr. Farrone noted in his deposition that he was approached by two Mercer County commissioners, who informed him that they were aware of the conditions in the District Attorney's Office and requested that he try to "somehow get [his] boss to stop sending these [e]mails that he was sending because … they were all … exploding land mines." Exh. 1, Farrone Tr. at 122-23. Likewise, when Mr. Farrone went to speak with Ms. Hamilton about Mr. Acker's discriminatory treatment of Kara Rice (another female ADA in the office), Ms. Hamilton informed Mr. Farrone that the County "commissioners [were] aware of what's going on in the office," that she had "run it by [their] solicitor, Solicitor Gabriel," and that the "there[ was] nothing [the County] could do about it" because Mr. Acker was "an elected official." *Id.* at 121.[2] Ms. Hamilton once again stated that "there was nothing [Mercer County] can do about [Mr. Acker's conduct]" when Mr. Farrone later spoke to her about Mr. Acker's harassment of S. Additionally, as will be discussed in more detail *infra.*, § III, Mr. Acker's abuse was pervasive, omnipresent, and obvious. Mercer County had agents, like Ms. Hamilton, who were extensively involved in the daily affairs of the District Attorney's Office and fielded multiple complaints concerning Mr. Acker. This, along with each of the above, clearly indicates that the County was aware of the abuse transpiring in the District Attorney's Office.

Further, if Ms. Hamilton's testimony is to be believed, Mr. Acker informed her multiple times that he was contemplating firing Mr. Farrone because Mr. Farrone "was not supporting his management style." Exh. 5, Hamilton Tr. at 33. If Mr. Farrone's testimony is believed by the jury, Ms. Hamilton would have been well-aware that Mr. Farrone's opposition to Mr. Acker's so-called

---

[2] Mr. Farrone's sworn answers to Mercer County's First Set of Interrogatories (as well as his deposition) stated that Joan Mooney, the office manager, was a witness to Mr. Farrone's two meetings with Ms. Hamilton about mistreatment of women. Defendants have been aware that Joan Mooney was present at these conversations since Mr. Farrone answered their First Set of Interrogatories in September 2024, but neither elected to depose her. *See* Exh. 9 at 5.

"management style" involved explicitly discriminatory behavior – such as calling female employees "bitches," stripping opportunities from capable female attorneys like Kara Rice, or denigrating and pressuring disabled employees like S. Despite this, Ms. Hamilton did nothing to dissuade or prevent this abusive proposition by Mr. Acker, nor did she encourage Mr. Acker to utilize the County Handbook-mandated progressive discipline procedures. *See* Exh. 5, Hamilton Tr. at 37 (confirming that the "County tends to follow[s] progressive discipline); *see also* Exh. 6, Table of Contents, 41. In fact, Ms. Hamilton would go onto encourage Mr. Farrone to "confront [Mr. Acker] … on a weekly or even daily basis," despite telling Mr. Farrone that Acker "may fire [him] for it." Exh. 1, Farrone Tr. at 122. Mr. Farrone even notified Ms. Hamilton that he had decided to fire (notably, not that he *had* fired) Mr. Farrone on the day he did so; Ms. Hamilton did nothing to stop it. Exh. 5, Hamilton Tr. at 36.

### III. Mr. Farrone has made a *prima facie* showing for all elements of retaliation under Title VII and the PHRA.

The substance of Mercer County's third argument largely mirrors the content of Mr. Acker's Motion for Summary Judgment – *i.e.*, that Mr. Farrone's conduct cannot be deemed a "protected activity" as a matter of law, and that Mr. Farrone was not fired for engaging in a protected activity. Said arguments are wholly refuted in Mr. Farrone's Response to Mr. Acker's Motion for Summary Judgment. Accordingly, and to avoid duplicative filings, Mr. Farrone references and incorporates the arguments raised in his Response to Mr. Acker's Motion for Summary Judgment to respond to the like-assertions raised here by Mercer County.

The only argument that Mercer County raises that does not expressly appear as part of Mr. Acker's Motion is the assertion that Mr. Acker's use of the word "bitch" to describe female ADAs cannot give rise to a Title VII violation. *See* ECF No. 55 at 16-17. This assertion is not only incorrect but also misconceives the Title VII violation raised by Mr. Farrone.

Mr. Farrone stood against pervasive discriminatory practices and behaviors perpetuated by Mr. Acker – including the limited latitude he permitted female persons and disproportionate and abusive supervision – a portion of which was Mr. Acker referring to female employees as "bitches."  It is well-established that extensive use of derogatory terminology, alongside other discriminatory occurrences, can create an atmosphere hostile to certain protected classes in violation of Title VII.  *See*, *for instance*, *Kengerski v. Harper*, 6 F.4th 531, 537 (3d Cir. 2021) (allowing retaliation claim to be predicated on the hostile work environment created by discriminatory conduct in the workplace); *Patel v. CF Fresh LLC*, 2022 WL 16747276, at *16 (E.D. Pa. 2022) (allowing retaliation claim to proceed where plaintiff complained about discriminatory comments because said comments created an environment hostile to certain protected characteristics).  It is beyond doubt that Mr. Acker's abuse created precisely such an environment.

For example: Mr. Acker admits to repeatedly (not just once) calling female ADAs "bitches" and using the term "cum dumpster" in front of other female County employees to describe a female rape victim.  *See* Exh. 8, Acker Tr. at 36-37.  Female ADAs informed Mr. Farrone that they were offended by Mr. Acker's use of such terms.  *See* Exh. 1, Farrone Tr. at 164-65.  Mr. Acker also admits that he opposed continuances requested to accommodate female attorneys' pregnancies (*see* Exh*.* 8, Acker Tr. at 48-49), and to requiring female ADAs to plead down cases despite their strength and the capacity of the female ADA (*Id.* at 47-48).  Multiple female ADAs informed Mr. Farrone that they felt this sort of treatment by Mr. Acker was sexist.  *See* Exh. 1, Farrone Tr. at 163-64. Mr. Acker also opposed mothers working from home during Covid-19 and suggested their children may be faking illnesses, expressed hostility to mothers bringing their young children to the Courthouse, and indicated that his own daughter wasted her education by having children.

Exh. 9 at 4.  All these factors, when considered together, most certainly fostered an environment that was pervasively harmful and alienating to female employees in the department.

That said, whether Mr. Acker calling female employees "bitches" was actually sufficient to create a Title VII violation is ultimately irrelevant to the present dispute.  A plaintiff in a retaliation case, as here, need only prove that they "had a reasonable, good faith belief" that the conduct in issue created a hostile work environment.  *Clark County School Dist. v. Breeden*, 532 U.S. 268, 270 (2001); *see also Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006) ("Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII").  Mr. Farrone saw how Mr. Acker treated the women in the office, was told by his female colleagues that Mr. Acker had insulted and belittled them, and spoke up to oppose that behavior.  Mr. Farrone's earnest concern for the wellbeing of his colleagues is obvious on the face of this record and was plainly known to the office at the time he was fired – indeed, Ms. Hamilton admitted exactly as much:

> Q:  Would it be fair to say that Brian Farrone was concerned about the employees in the District Attorney's Office?
>
> A:  Absolutely.  Yes.

Exh. 5, Hamilton Tr. at 26.  As more fully discussed in Plaintiff's Opposition to Defendant Peter C. Acker's Motion for Summary Judgment, Mr. Farrone stood against what he reasonably believed to be discrimination and was ultimately fired for doing so.  That is quintessential retaliation – summary judgment simply cannot be justified in the face of this evidence.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Defendants County of Mercer, Pennsylvania and Peter C. Acker's Motions for Summary Judgment.

Respectfully submitted,

/s/ Walter P. DeForest
Walter P. DeForest, PA ID No. 05009
Marie DeForest Garcia, PA ID No. 209090
Alec R. Smith, PA ID No. 334114
DEFOREST KOSCELNIK & BERARDINELLI
436 Seventh Avenue, 30th Floor
Pittsburgh, PA 15219-1831
Phone: (412) 227-3100; Fax: (412) 227-3130
Email:  deforest@deforestlawfirm.com
           mdeforest@deforestlawfirm.com
           smith@deforestlawfirm.com

*Counsel for Plaintiff*
*Patrick Brian Farrone*

## CERTIFICATE OF SERVICE

I hereby certify that on this 23rd day of April, 2025, I electronically filed a true and correct copy of the foregoing *Response in Opposition to Defendant County of Mercer, Pennsylvania's Motion for Summary Judgment* with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Walter P. DeForest
Walter P. DeForest