IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PATRICK BRIAN FARRONE, | : |
| | : |
|     Plaintiff, | : |
| | : |
|         v. | : Civil Action No. 2:23-cv-01528-CCW |
| | : |
| PETER C. ACKER and THE COUNTY OF MERCER, PENNSYLVANIA, | : |
| | : |
|     Defendants. | : |

**DEFENDANT MERCER COUNTY'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Defendant, Mercer County, by and through its undersigned counsel, Gabriel Fera, P.C., hereby files this Reply in Support of Motion for Summary Judgment.

**1. Mercer County is not Farrone's Employer.**

The Plaintiff's Response in Opposition to the County's Motion for Summary Judgment demonstrates a fundamental misunderstanding of how county governments work. "The salaries and compensation of all appointed officers and employees who are paid from the county treasury shall be fixed by the salary board established under section 14722 (relating to salary boards)….The powers authorized by the county commissioners under this section *shall not affect the hiring, discharging and supervising rights and obligations with respect to employees as may be vested in the judges or other county officers.*[1]" 16 Pa.C.S.A. § 14720 (emphasis added) (formerly cited as 16 P.S. § 1620). Regardless of whether the County Commissioners vote to approve the District Attorney's choices for hiring and firing employees in his office, it is a purely administrative act to create the position and set the salary as required by law. The County Commissioners have no legal

---

[1] The District Attorney is one of the elected row offices of the County pursuant to 16 Pa.C.S.A. § 12301(a)(11) (formerly cited as 16 P.S. § 401).

1

authority to deny the District Attorney's hires or overrule the District Attorney's terminations. That authority rests solely with the District Attorney. There are no facts in the record that the District Attorney ceded any of his statutory authority to the County or that the County hired or fired any employees of the District Attorney's Office independent of the District Attorney.

The County's former HR director, Jennifer Hamilton, testified specifically to this point as follows:

> Q. Did Mr. Acker speak with you about firing Brian in the time period of May 2020?
> A. Um, in the weeks prior to Brian being fired, probably the month prior to him being fired Mr. Acker spoke to me once or twice in just normal conversation about the fact that if he and Brian didn't seem to get on the same page, he was going to probably need to let him go, because things were not going well in the office and he needed a First Assistant that was in sync with him. So I was aware that that might be happening, and I knew that they were not getting along and I knew things were not getting better. So that's what I recall about that. I think probably the day of the termination Pete sent me an e-mail and said, I've decided to fire Brian, which he's an elected official so that's his prerogative. So he said he had decided to fire him and then he sent me the e-mails and the record for the file, his employee file.
> Q. Mr. Acker didn't ask your opinion about whether Brian should be fired; did he?
> A. No.

ECF No. 56-3 (Hamilton Depo), 36.

The Plaintiff's Reply next focuses on the concept of judicial admissions. *See* ECF No. 64, 4-6. He claims the County "admitted" being Farrone's employer, citing pages 2 and 9 of the County's Brief in Support of its Motion to Dismiss and Paragraph 9 of its Answer. The County made no such admissions. On page 2 of its Brief, the County described the Plaintiff's allegations (which must be accepted as true for purposes of a summary judgment motion) that the County was his employer; it did not describe itself as Farrone's employer, and on page 9, the County specifically noted that Defendant Acker was responsible for Plaintiff's termination as opposed to the County. Compare ECF No. 64, 5 with ECF No. 22, 2, 9. In Paragraph 9 of its Answer, the

County pled that Plaintiff was "under the authority of the District Attorney pursuant to 16 P.S. §1620" and that "[t]he County had no authority to hire, fire, or supervise him." Compare ECF No. 64, 5 with ECF No. 30, ¶ 9.

Plaintiff cites *Graves v. Lowery*, 117 F.3d 723 (3d Cir. 1997) for the proposition that judicial employees can be joint county employees because county personnel policies covered them, received service pins from the County, and were paid by the county. ECF No. 64, 9. That is not the holding of *Graves*. The standard for joint employment under *Graves* is that there must be some extraordinary circumstance where the County assumes a row officer's rights to hire and fire.

In *Graves*, former court clerks filed a sex discrimination and retaliation suit under Title VII against District Justice Horace A. Lowery, and the county. The district court dismissed the complaint against the county, holding that, as a matter of law, the county could not be deemed the clerks' employer or co-employer. The Third Circuit reversed the dismissal, determining that the county could potentially be recognized as a co-employer, emphasizing the necessity of a factual inquiry into the degree of control and involvement the county had in employment decisions and policies affecting the clerks. *Graves* was not a summary judgment case. Critically, the most important factor recognized by the Third Circuit at this pleading stage was that the clerks contended they were hired by the county, independent from the court, to work in a different magisterial district than Lowery, and in the Court's view, "this asserted fact alone should have precluded the district court from deciding the matter on a motion to dismiss." *Graves*, 117 F.3d at 728. Not only did the clerks allege that the county hired them directly, but they submitted a formal complaint to the county pursuant to the county's policy, the county convened an investigative panel and provided them with counseling services. Even then, the Third Circuit "merely note[d]

that the employment relationship was sufficiently ambiguous that the Clerks' claim against the County should not have been dismissed at the pleading stage." *Id*. at 729.

None of these facts are present here at summary judgment. The County did not hire or fire Farrone independent of the District Attorney, and while Ms. Hamilton testified in response to a hypothetical question, "I think if I found out any … elected official was becoming abusive to their employees, I would get involved" that does rise to the level of convening an investigative panel or providing any services to Farrone. In the *Graves* decision, the Third Circuit also gave weight to the expectation of the clerks that their county had some authority over Judge Lowery based on the county hiring them, investigating in response to a formal complaint, and providing counseling to them. *Id*. at 728. Farrone cannot credibly claim to have that expectation where he never availed himself of the County's complaint procedures, and the times that he did go to Ms. Hamilton to complain about Acker, he was repeatedly told that he had to work it out because Acker was an elected official. ECF No. 56-2 (Farrone Depo), 121; ECF No. 56-3 (Hamilton Depo), 26-7.

Farrone also points to receiving the county handbook and sex harassment training from the County as evidence of control, but Ms. Hamilton's testimony, cited by Plaintiff on this topic, does not go as far as he would have this Court believe. She did not testify that Acker or Farrone were required to participate in the County's sex harassment training, only that video training was available through CCAP, and she merely confirmed the 2018 version of the handbook was the correct and effective version used by the elected District Attorney, who was free to use or reject the County's handbook and training resources. There is zero evidence of any control over the day-to-day activities of any employee in the District Attorney's Office by the County.[2]

---

[2] Plaintiff also cited *Faush v. Tuesday Morning, Inc.*, 808 F.3d 208 (3d Cir. 2015), asserting that the defendant's responsibilities with respect to wages made payments indistinguishable from direct employee compensation. ECF 64, 9. *Faush* however did not involve a county government or an elected official. Rather Faush worked for a temporary

2. **Farrone Made No Report of Discrimination to Mercer County.**

Farrone feigns incredulity that the County "seems to presume" that he, himself, must make the County aware of the so-called "abuse." But to state a retaliation claim, he must have engaged in a protected activity that triggered the County to retaliate, which he did not do. Griping about your boss is not a protected activity unless you report discrimination when you do it. Now, Plaintiff claims to have "extensive" evidence that the County knew of "abuse" by Acker. But he does not cite any such evidence, instead making only conclusory inferences. Nor does that fact, even if true, support a claim that the County retaliated against him for complaining about it.

3. **Mercer County Joins in Defendant Acker's Reply in Support of Summary Judgment:**

Mercer County joins Defendant Acker's Reply in Support of Summary Judgment.

## CONCLUSION

WHEREFORE, Mercer County respectfully requests that this Court grant its Motion for Summary Judgment by dismissing Plaintiff's claims in their entirety because there are no genuine issues of material fact, and the County is entitled to judgment as a matter of law.

                                        Respectfully Submitted,

                                        GABRIEL FERA, P.C.

Date: April 30, 2025                  By: */s/ Christopher P. Furman*
                                                  Stephanie L. Fera (PA 314392)
                                                  Christopher P. Furman (PA 89822)
                                                  1010 Western Avenue, Suite 200
                                                  Pittsburgh, PA 15233
                                                  Tel: (412) 223-5815
                                                  sfera@gabrielfera.com
                                                  cfurman@gabrielfera.com
                                                  *Counsel for Defendant Mercer County*

---

employment agency that sent Faush to work for one of its clients and the client was alleged to commit discriminatory acts. While the *Faush* Court did note the presence of the pay related facts, that was not the reason it held the defendant a joint employer with the agency. Rather, the court focused on and analyzed how much day to day control the defendant exercised over the plaintiff. "Faush worked on [defendant's] premises under the immediate supervision and direction of [defendant's] personnel. [Defendant's] control over Faush's activities could suffice to make him a common-law servant even though [the agency] paid him and had the ultimate power to fire him." *Id.* at 218.

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of April 2025, I electronically filed true and correct copies of Defendant Mercer County's Reply in Support of Motion for Summary Judgment with the Clerk of Court using the EM/ECF system, which will send notification of such filing to all counsel of record.

Date: April 30, 2025

By: */s/ Christopher P. Furman*
Stephanie L. Fera (PA 314392)
Christopher P. Furman (PA 89822)
1010 Western Avenue, Suite 200
Pittsburgh, PA 15233
Tel: (412) 223-5815
sfera@gabrielfera.com
cfurman@gabrielfera.com

*Counsel for Defendant Mercer County*